# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

STATE OF NEW JERSEY,

AT MARCH TERM, 1873.

---

STATE, MORRIS CANAL AND BANKING COMPANY, PROSE-
CUTORS, PLAINTIFFS IN ERROR, v. JOHN B. HAIGHT,
COLLECTOR OF JERSEY CITY.

1. It does not follow that if the state should lease a portion of the public domain, the lands so leased would be exempt from taxation.
2. Whether lands of the state conveyed by statute for a term of years, or for any other term, are taxable or not, depends not on the qualities of the estate so granted, but on the legislative intention expressed in such act.
3. The conveyance made by the state in this case construed.

---

In error to the Supreme Court.

For former proceedings in this case, see 6 *Vroom* 178.

The State of New Jersey, by statute, approved March 14th, 1867, granted to the Morris Canal and Banking Company, all the right, title and interest of the state in and to certain lands under water, defined by boundaries.

The second proviso in the first section is as follows: And provided further, that the said company shall, within ninety days after the passage of this act, execute and deliver to the governor of this state, their promise and undertaking, under seal, unconditionally, to pay to the treasurer of this state, yearly, the sum of $25,000 per year, on or before the first Tuesday of January in each year, during the continuance of their charter, and so long as the said company, their successors or assigns, shall continue to hold or occupy the same; the first payment of a ratable portion of which shall fall due on the first Tuesday of January, 1868, it shall be lawful for the said company, instead of the said annual payment of $25,-000, to pay into the treasury of this state, at any time, the sum of $357,142.

It was further enacted, that the said company might, under the provisions of their charter, construct piers, wharves, docks, basins, warehouses, and other structures within the limits above described, and make reasonable rules and regulations for the use thereof, to enable them to carry on a transportation business in and over their canal and elsewhere, which they were *thereby* empowered to do. And also to afford facilities for commerce, "*provided that the exemption of said company, in its original charter from taxation, assessments, or other legal impositions, shall not extend to the property or privileges hereby granted.*"

The act was to be enforced during the continuance of their charter, and at the expiration of that time, the lands thereby granted, with the improvements thereon, should revert to the state on the same terms and conditions provided in the original charter of the company respecting the transfer of the property thereof to the state.

These *terms* are, that the state, at the end of ninety-nine years from the passage of the act, (December 31st, 1824,) may take the canal and appurtenances at a valuation by commissioners; and if this be not done within one year thereafter, the charter shall continue for fifty years longer, when

it shall cease, and the canal and appurtenances become the sole property of the state.

June 10th, 1867, the company executed and delivered to the governor of this state their promise and undertaking, under seal, according to the second proviso of the first section, and have been since that time in the possession and use of said premises, paying the stipulated annual price for such possession and enjoyment.

As a general description of the situation of the property named in the grant from the state, it may be sufficient to say, that the outlet lock of the canal company is at Washington street. East of *this*, and extending to Hudson street, is what is called the north canal basin, opening southerly between two piers, through an outlet, into what is known as the south or shipping basin, which extends southerly to the northerly line of the Central Railroad Company's dock. There are two unfinished piers projecting northerly from the Central Railroad Company's line, into this shipping basin. There are also two larger piers opposite to them, on the southerly side of the north basin. And between these opposite piers are the gaps referred to that are to be left open for navigation.

The tide ebbs and flows over all the premises granted by the state to the prosecutors under the act of 1867, and it is not *uncovered* by the water at low tide.

For the plaintiffs in error, *I. W. Scudder* and *Thomas N. McCarter*.

For the defendants, *J. Dixon*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The Supreme Court approved of the assessment in this case, and now the principal objection raised up against this result is, that the land which has been taxed is the property of the state, and, therefore, is not liable to the burthen in question.

This argument proceeds upon the assumption that the estate of the Morris Canal and Banking Company, the plaintiffs in error, is a leasehold, and that it is a legal principle that a tax, as between landlord and tenant, in the absence of special agreement, falls upon the former.   Hence, it is argued that as it is the general policy of our laws to charge the taxes ultimately on the land owner, and as the lands of the state cannot be taxed, the property in question is exempt.

If the premises thus claimed should be granted, and this case is regarded upon the assumption that the estate held by the plaintiffs in error, is a leasehold for a term of years, it may well be doubted whether the inference drawn from such a state of facts, is well founded.   I am far from being prepared to hold that, because, as between lessor and lessee, in an ordinary case, it is the rule that the landlord is to pay the taxes imposed on the property during the term ; the same result obtains where the land is derived from the state.   The rule putting this obligation on lessor, grew, originally, out of the supposed intention of the parties, and the legal principle is nothing more than the creature of the construction of leases.

But it appears to me that a question very different from this is presented, when a court is asked to draw the inference that, when the land of the state is put for a term of years in the hands of a citizen, it is the implied intention that, with respect to such property, the state agrees to give up its right to tax.   In such transactions it is not practicable to place the representative of the public on the same level with private persons.   If an individual leases property in an absolute form for a defined period, he parts with his entire right in the demised premises during such term.   But, clearly, this is not the effect of a lease made by the government, for it cannot be pretended that the creation of such an estate would prevent the public from taking the lands thus demised for its own use by the right of eminent domain.   It is constantly to be borne in mind that the state, when a lessor or grantor, by legislative act, is still a government ; and, on this account, if this case was divested of the characteristic presently to be

noted, I should not be inclined to hold that the deduction could be drawn, that the state, by force of its position as les- sor, had agreed to relinquish one of its necessary powers of sovereignty, that is, its right to tax. But in my apprehen- sion these questions as to the incidents and effect which usually belong to such an estate as has been vested in these plaintiffs, whatever such estate may be, has no practical bearing on the point to be decided. The fallacy of the argu- ment erected on such a basis, arises from losing sight of the fact that the interest which the plaintiffs in error have in these premises, is created not by a common law instrument, *inter partes*, but by an act of the legislature. To my mind, the introduction of this element of the affair clears it of all difficulty. It reduces the transaction, at once, to a question, purely of legislative intention ; an intention which must pre- vail, no matter how violative it may be of the ordinary rules which attach incidents and qualities to estates in realty. Titles to lands cannot be modified indefinitely at the will of private parties ; no agreement of theirs can impart to an estate for years, the peculiar properties of an estate in fee, but statu- tory authority is under no such restriction. No one will ques- tion the power of the legislature to grant any part of the public domain in fee, the grant to take effect in the future, without the intervention of a freehold to support it, or that the same estate could be, in the same way, declared to be ex- empted from liability to the incidents of curtesy or dower. The entire subject is in the legislative hand, and the only pertinent inquiry is, as to the particular interest, which in this instance, has been placed in this corporation, no matter how anomalous such an interest may be.

On this hypothesis, the circumstances before us will bear but a single construction. By the original charter of the Morris Canal Company it is provided, " that no state, county, township, or other public assessments, taxes, or charges what- soever, shall at any time be laid or imposed upon the said canal company, or upon the stocks and estates which may be- come vested in them under this act," &c. *Pamph. Laws,*

1824.   The law of 1867, which conveys to the plaintiff in error the premises in question, contains a declaration, by way of proviso, in these words, viz.: " That the exemption of said company, in its original charter, from taxation, assessments, or other legal impositions, shall not extend to the property or privileges hereby granted." That is to say, that the land embraced in this grant, of this act of 1867, shall be subject to taxation, although the other property of the corporation is exempted.   The intent of this legislation is perfectly clear; it is to render these premises taxable as other property is, by the state, and in my opinion, this corporation must, therefore, be held to be possessed of precisely such an estate as will effectuate such clear intent.   The will of the legislature is above and will override all technical rules which might, under other circumstances, be applicable.   The statutory declaration that these lands shall be liable to be taxed, involves, as a necessary consequence, that such tax shall be assessed against the plaintiffs in error.   That the land shall be subject to taxation, but that the state is to be charged as lessor with such taxes, is an absurdity.   There would be no incongruity with legal principles in a statutory enactment that a lessee should stand, during the term, for certain purposes, as the absolute owner of the land, and what can be done by express provision may be effected as well by necessary implication.   If there was no perspicuous indication in this law of an intention to make these lands taxable, it would have been quite pertinent to inquire with respect to the usual incidents of an estate raised by a lease or other conveyance, but implications arising from such a source are entirely insignificant in opposition to the plain purpose expressed in this act.   The estate must be held to correspond to such purpose. If the question, therefore, is asked, what estate has this canal company in these premises? the answer, all sufficient for the matter in hand, is, such an estate as is taxable.   This view brushes out of the case all technicalities, and harmonizes the result with the intention, not only of the state, but also of the canal company.

Nor have the plaintiffs in error satisfied me that the piers and bulkheads, which are within the bounds of the premises in question, should be taken out of this tax.

The allegation is, that these works had been constructed by the company before the conveyance of the property to them by the state. Granting that this is so, it does not follow that such works had been rightfully erected. It clearly appears that they stand on the property of the state; how is it shown that this corporation was warranted in placing them on such property? They could do so only by the consent of the state, and they have not shown such consent. Their deeds carry the title to the lands along the shore, but they cannot claim that the acts in question were done by them as riparian owners. In front of their land they had erected a canal and canal basin, and beyond the exterior bank of such canal and basin, these piers and bulkheads had been constructed. Prior to recent legislation as riparian owners, the company were authorized to extend, by filling in, the shore line into the water, and thus acquire title to the land so reclaimed. But by virtue of such right, they were not empowered to make such encroachment on the outside of their canal basin. So, also, as shore owners, they were privileged to build wharves and docks, but it is not possible to hold that these works fall within the definition of either of such structures.

I think the judgment should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Bedle, Dalrimple, Depue, Dodd, Green, Lathrop, Wales. 9.

*For reversal*—None.